IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:05-CR-0131 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **FRANKLIN TIMOTHY BROWN** | : |

### MEMORANDUM

Presently before the court is a motion by defendant, Franklin Timothy Brown ("Brown"), to suppress evidence seized by police as a result of a traffic stop on grounds that the officers' actions were not supported by individualized suspicion of criminal activity.  The motion will be denied.

I. **Findings of Fact**[1]

The stop occurred at about 3:00 a.m. on March 14, 2005.  Two officers of the Lancaster City Police Department were on routine patrol in a marked police vehicle when they observed a gold-color Cadillac traveling at a high rate of speed through an intersection a short distance in front of them.  They began to pursue the car. The officers estimated the car's speed to be approximately fifty miles per hour—more than double the posted limit of twenty-five miles per hour—and observed the car change lanes without using a turn signal.  They activated the

---

[1] These findings are based on testimonial and documentary evidence presented at the hearing on the motion.  See United States v. Pelullo, 173 F.3d 131, 135-38 (3d Cir. 1999); see also Ornelas v. United States, 517 U.S. 690, 695-98 (1996). They substantially reflect the testimony given by the arresting officers, which the court credits for the reasons provided herein.

warning lights of the police vehicle.  The Cadillac, after making a sudden turn, pulled into an off-street parking area.

As they approached the car, the officers became suspicious, observing that it matched the description of a vehicle involved in a recent bank robbery, the subject of a police advisory on which the officers had been briefed earlier in their shift.  The robbery had occurred less than a week earlier, and involved two black males who, using firearms and pepper spray, had stolen a sum of money from the Northwest Savings Bank in Wrightsville, Pennsylvania.  Included in the appropriated funds were three dye packs, intended to explode after removal from bank premises to coat the bills in traceable red dye.  Soon thereafter, local businesses and individuals reported seeing two or three black males exchanging dyed bills in coin machines around the area.  They were reportedly driving a gold Cadillac with duct tape on the rear tail lights and bearing Pennsylvania registration number FWS0102.  One of the officers contacted the police station and confirmed the contents of the advisory.

The Cadillac driven by Brown matched this description precisely.  The officers asked Brown to exit the car and searched his person and the front passenger area of the car for weapons.  They also retrieved a baggie, which appeared to be drug paraphernalia, that was in the front passenger area in plain view from the outside of the car.  The baggie turned out to be only trash, and the officers did not discover weapons or other contraband.  They allowed Brown to re-enter the car and began to prepare citations for driving at an unsafe speed and changing lanes without using a turn signal, in violation of the Pennsylvania Motor

Vehicle Code.[2]  They also determined that Brown's license had been suspended, and prepared a citation for this offense.[3]

The officers returned to the car and presented the citations to Brown.  In light of Brown's suspended license, the officers asked Brown to exit the car.  As he did so, several torn pieces of United States currency, stained with red dye, fell from his clothing.  Officers immediately placed Brown under arrest and, after a thorough search of his person, discovered more dyed bills with serial numbers matching the money taken from the bank.  He was later charged, by federal indictment, with armed bank robbery and unlawful possession of a firearm.[4]

The motion to suppress was filed in June 2005, and a hearing was held on August 16, 2005.  The officers who effected the stop were called to testify, and offered a substantially consistent, candid, and credible version of the events preceding and during the stop.  They estimated, based on their training and experience and opportunity to observe Brown's car during the pursuit, that he had been traveling at approximately fifty miles per hour.  Brown also took the witness stand, but presented a significantly less clear—and less believable—account.  He recounted that he had been driving at approximately fifteen miles per hour when the officers first saw him and that he had not exceeded twenty-five miles per hour

---

[2] See 75 PA. CONS. STAT. §§ 3334, 3361.

[3] See id. § 1543.

[4] See 18 U.S.C. §§ 922, 924, 2113.

or changed lanes.  Several inconsistencies in his testimony, regarding the events before and after the stop, were obvious.  No other witnesses were presented.  The court took the matter under advisement.

## II. <u>**Discussion**</u>

The constitutionality of a warrantless search or seizure hinges on whether, from an objective standpoint, the action can be described as "reasonable" in light of the information then known to the officials involved.  <u>See, e.g.</u>, <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002); <u>see also</u> U.S. CONST. amend. IV.  "Reasonableness," although "strictly a legal issue," is nevertheless fact-specific and must be assessed by application of the particular circumstances of the case to principles and rules derived from overall constitutional standard.  <u>United States v. Wogan</u>, 356 F. Supp. 2d 462, 466 (M.D. Pa. 2005); <u>see</u> <u>Christopher v. Nestlerode</u>, 373 F. Supp. 2d 503, 514-15 (M.D. Pa. 2005).

The nature of this analysis requires the court to consider separately the actions of officers in this case.  The initial seizure occurred when the officers stopped the car driven by Brown.[5]  The first search occurred when they conducted a pat-down of Brown and inspected the interior of his car for weapons.  A second search occurred after Brown was formally arrested, when the officers performed a thorough search of his person and his car.

---

[5] <u>See, e.g.</u>, <u>Arvizu</u>, 534 U.S. at 273 (noting that a stop of a vehicle constitutes a "seizure" of a "person" for purposes of the Fourth Amendment)

### A. **Stop of the Vehicle**

A public seizure of an individual is constitutionally "reasonable" if the facts known to the officer establish "probable cause" to believe that the individual had committed, or was committing, a criminal offense under state law. See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); see also Johnson v. Campbell, 332 F.3d 199, 205-14 (3d Cir. 2003); Christopher, 373 F. Supp. 2d at 515-16. The existence of probable cause must be judged from the perspective of an objective observer in the officer's position at the time of the seizure. See Devenpeck v. Alford, 125 S. Ct. 588, 593-94 (2004); see also Wright v. City of Philadelphia, 409 F.3d 595, 602-03 (3d Cir. 2005). "The dispositive question is whether the investigating officer, with his or her experience and based on the facts then known, could have reasonably concluded that the [person to be seized] more likely than not [had committed] a crime." Wogan, 356 F. Supp. 2d at 467 (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)).

Probable cause supported the seizure in this case. The officers observed the car operated by Brown driving at approximately fifty miles per hour on a city street with a posted limit of twenty-five miles per hour. They followed the car, and saw it change lanes without using a signal in a downtown area with other traffic present. Their recollections of these events were consistent—despite sequestration—and credible based on the court's assessment of the officers' demeanors on the witness stand. Moreover, the officers' estimations of Brown's speed were, in the view of the court, reliable in light of their ability to observe Brown's car and experience in law enforcement. They could reasonably infer from their observations that Brown had

5

violated several provisions of the Pennsylvania Motor Vehicle Code, including driving at an unsafe speed, 75 PA. CONS. STAT. § 3361, driving in excess of posted speeds, 75 PA. CONS. STAT. § 3362,[6] and changing lanes without signaling, 75 PA. CONS. STAT. § 3334.  The stop of the vehicle was justified based on these suspected violations.

### B.   Search for Weapons

Officers are constitutionally entitled to conduct a brief "pat-down" of a seized suspect, and a brief search of surrounding accessible areas, if they have a "reasonable suspicion" that the individual may be armed or otherwise pose a threat to their safety.  See Minnesota v. Dickerson, 508 U.S. 366, 372-74 (1993); see also Michigan v. Long, 463 U.S. 1032, 1049-51 (1983).  "[T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger."  Id. at 1050 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).

---

[6] That the officers did not issue a citation to Brown for driving in excess of posted speed limits—because the officers did not comply with procedural requirements concerning estimations of speed, see 75 PA. CONS. STAT. § 3368 (providing that officers must follow a car for three-tenths of a mile to secure an admissible estimate of speed)—does not affect the court's ability to find, for purposes of the Fourth Amendment, that probable cause existed to suspect plaintiff of an offense under 75 PA. CONS. STAT. § 3362.  See Devenpeck, 125 S. Ct. at 593-94 ("[A]n arresting officer's . . . subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); see also Christopher, 373 F. Supp. 2d at 518 ("[T]he 'reasonableness' of a seizure, when based on individualized suspicion, is judged without reference to the authority of officials to effect an arrest under state law.").

Reasonable suspicion supported the brief search of Brown and the interior of his car. Upon approaching the car driven by Brown, officers noticed that it seemingly matched the description of a vehicle linked to a recent armed bank robbery. An advisory detailing the bank heist had been provided to the officers at the start of their shift and was verified during the course of the stop. The link between the car driven by Brown and the armed robbery gave police reasonable grounds to believe that Brown may have been involved in the incident and may be in possession of a weapon, either on his person or in the car.[7] They acted reasonably in conducting a pat-down of Brown and a brief search of the interior of the car before proceeding further.

### C. Search Following Arrest

Following a valid arrest, officers are permitted to conduct a full search of the arrestee's person and surrounding areas. United States v. Robinson, 414 U.S. 218, 235 (1973). This search is not limited to weapons, and may include the passenger compartment of a vehicle that the arrestee was operating at the time he or she was seized. See Thornton v. United States, 124 S. Ct. 2127, 2130-31 (2004); see also Wogan, 356 F. Supp. 2d at 466-67.

---

[7] Indeed, these facts alone would support a finding of probable cause to believe that Brown conspired to commit the robbery and that evidence of the crime—including red-dyed bills—would be found in the car, justifying Brown's arrest and a full search of his person and the passenger compartment of the vehicle. See, e.g., See Thornton v. United States, 124 S. Ct. 2127, 2130-31 (2004); United States v. Ross, 456 U.S. 798, 824 (1982); see also infra note 9.

The arrest of Brown and the searches incident thereto were valid. The officers reasonably suspected that the Cadillac operated by Brown matched the description of a vehicle linked to a recent armed bank robbery. This suspicion was confirmed when bits of United States currency, stained with the same red dye used to trace stolen funds, fell from Brown's clothing during the course of the stop.[8] These facts established probable cause to suspect that Brown may have been involved in the bank robbery and justified his arrest.[9] As such, the subsequent searches of his person and the interior of the car were reasonable under the Fourth Amendment.

### III.  Conclusion

The warrantless seizure and searches conducted by officers in this case comported with the constitutional standard of reasonableness. The motion to suppress does not challenge the validity of subsequent searches of Brown's home or his effects, and the court need not reach these matters. The motion will be denied.

---

[8] See Horton v. California, 496 U.S. 128, 136 (1990) (noting that observation of items in "plain view" is not a "search" within the meaning of the Fourth Amendment).

[9] See, e.g., 18 PA. CONS. STAT. § 3701 (defining felony offence of robbery); see also Wright, 409 F.3d at 601 ("Under Pennsylvania law, police officers can execute warrantless arrests for felonies . . . ."); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) ("The validity of an arrest is determined by the law of the state where the arrest occurred."). See generally Christopher, 373 F. Supp. 2d at 5166-17 & n.25 (discussing whether state law governs validity of an arrest for purposes of assessing constitutionality of a search incident thereto and suggesting that "further judicial and scholarly inquiry is appropriate").

An appropriate order will issue.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     August 19, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:05-CR-0131** |
| : | |
| **v.** : | **(Judge Conner)** |
| : | |
| **FRANKLIN TIMOTHY BROWN** : | |

## **ORDER**

AND NOW, this 19th day of August, 2005, upon consideration of defendant's motion to suppress (Doc. 22), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 22) is DENIED.

          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge